IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| Intel Corp., et al., | NO. C 08-04555 JW |
| Plaintiffs, | **ORDER DENYING DEFENDANT'S MOTION TO DISMISS; GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO TRANSFER** |
| v. | |
| Wi-LAN, Inc., | |
| Defendant. | |

## I. INTRODUCTION

Intel Corporation ("Plaintiff") brings this declaratory judgment action against Wi-LAN, Inc. ("Defendant"), seeking a declaration of non-infringement with respect to eighteen United States patents, pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02. Plaintiff alleges that Defendant has asserted rights in the patents-in-suit, each of which relate to the "WiMAX" technology that Plaintiff has taken steps to develop into marketable products.

Presently before the Court is Defendant's Motion to Dismiss for Lack of Personal Jurisdiction, Subject Matter Jurisdiction and Improper Venue, and Motion to Transfer to First Filed Forum.[1] (hereafter, "Motion," Docket Item No. 31.) The Court conducted a hearing on May 4, 2009. Based on the papers submitted to date and oral argument, the Court DENIES Defendant's Motion to Dismiss and GRANTS in part and DENIES in part Defendant's Motion to Transfer.

---

[1] On March 30, 2009, Defendant filed a notice of partial withdrawal of its Motion to Dismiss, pursuant to Civ. L.R. 7-7(e). (Docket Item No. 72.) Defendant represents that it has withdrawn its Motion with respect to the issues of personal jurisdiction and improper venue. Accordingly, the Court limits its inquiry to the issues of subject matter jurisdiction and the propriety of transfer to Texas.

## II. BACKGROUND

**A. Factual Allegations**

In a Complaint filed on September 30, 2008, Plaintiff alleges as follows:

Plaintiff is the owner of rights in U.S. Patent Nos. 6,459,687, 6,549,759 ("'759 Patent"), 6,577,863, 6,683,866, 6,693,887, 6,728,514, 6,804,211, 6,925,068 ("'068 patent"), 6,944,188, 6,956,834, 6,963,617, 7,006,530, 7,023,798, 7,177,598, 7,197,022, 7,289,467, 7,317,704, and 7,379,441 ("patents-in-suit"). (Complaint ¶ 10, Docket Item No. 6.) On its website, Defendant alleges that the patents-in-suit related to "WiMAX" products. WiMAX (Worldwide Interoperability for Microwave Access) and 802.16 refer to a wireless broadband communication standard promulgated by the IEEE. Defendant has asserted these patents against Plaintiff, made public statements regarding the alleged applicability of its patents to products having WiMAX functionality including Plaintiff's products, and confirmed its ability and willingness to file suit. Plaintiff has undertaking meaningful preparations to make and sell products that comply with the IEEE 802.16 standards. Plaintiff has not infringed and does not infringe, either directly or indirectly, any valid and enforceable claim of any of the patents-in-suit, either literally or under the doctrine of equivalents, nor is it aware of any infringement of any of the patents-in-suit. A substantial controversy exists between the parties which is of sufficient immediacy and reality to warrant declaratory relief. (Id.)

On the basis of the allegations outlined above, Plaintiff alleges thirty-eight counts relating to the non-infringement, unenforceability, and invalidity of each of the patents-in-suit.

**B. Procedural History**

**1. The California Actions**

Plaintiff initiated this declaratory judgment action on September 30, 2008. In the wake of Plaintiff's filing of this action, four additional declaratory judgment actions were filed against Defendant, each seeking a declaration of non-infringement the '759 patent: Marvell Semiconductor,

1  Inc. v. Wi-LAN, Inc., No. C 08-05544 JW; Broadcom Corp. v. Wi-LAN, Inc., No. C 08-05543 JW;
2  Sony Computer Entertainment, Inc. v. Wi-LAN, Inc., No. C 08-05742 JW; and Acer America Corp.
3  v. Wi-LAN, Inc., No. C 08-05624 JW (collectively, "California Actions"). The Court subsequently
4  related each of these five cases. (See Docket Item Nos. 38-39, 52.)

### 2. The Texas Actions

During the pendency of the California Actions, two actions have been pending in the Eastern District of Texas between Defendant and several of the California Action Plaintiffs, including Plaintiff Intel ("Texas Actions"). In the Texas Actions, which were filed on October 31, 2007, Defendant alleged infringement of U.S. Patent Nos. 5,956,323, 5,282,222 ("'222 patent") and RE 37,802. (Declaration of A. James Isbester in Support of Motion to Dismiss ¶ 6, hereafter, "Isbester Decl.," Docket Item No. 33.) These actions initially involved "Wi-Fi" technology, which is an earlier technology that relates to WiMAX. (Motion at 5.) On October 30, 2008, after the filing of this action, Defendant amended its complaint in the Texas Action to assert that the '222 patent was also infringed by WiMAX-capable machines. (Isbester Decl. ¶ 7.) Subsequently, on December 12, 2008, Defendant filed a motion in the Texas Action to amend its complaint to assert infringement of the '759 patent. (Id. ¶ 8.) On February 3, 2009, Judge Ward in the Eastern District of Texas granted Defendant's motion to add the '759 patent to its complaint in the Texas Action. (Declaration of Michael G. McManus in Support of Wi-LAN's Reply to Opposition to Wi-LAN's Motion to Dismiss or Transfer, Ex. F, hereafter, "McManus Decl.," Docket Item No. 158.)

Presently before the Court is Defendant's Motion to Dismiss and to Transfer to First Filed Forum.

### III. STANDARDS

Rule 12(b)(1) of the Federal Rules of Civil Procedure provides for a motion to dismiss for lack of subject-matter jurisdiction. A Rule 12(b)(1) motion may be either facial, where the inquiry is confined to the allegations in the complaint, or factual, where the court is permitted to look beyond the complaint to extrinsic evidence. Wolfe v. Strankman, 392 F.3d 358, 362 (9th Cir. 2004). On a

1 facial challenge, all material allegations in the complaint are assumed true, and the question for the
2 court is whether the lack of federal jurisdiction appears from the face of the pleading itself. See
3 Wolf, 392 F.3d at 362; Thornhill Publ'g Co. v. Gen. Tel. Elecs., 594 F.2d 730, 733 (9th Cir. 1979).
4 When a defendant makes a factual challenge "by presenting affidavits or other evidence properly
5 brought before the court, the party opposing the motion must furnish affidavits or other evidence
6 necessary to satisfy its burden of establishing subject matter jurisdiction." Safe Air For Everyone v.
7 Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004). The court need not presume the truthfulness of the
8 plaintiff's allegations under a factual attack. White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000);
9 Augustine v. United States, 704 F.2d 1074, 1077 (9th Cir. 1983). However, in the absence of a
10 full-fledged evidentiary hearing, disputes in the facts pertinent to subject matter are viewed in the
11 light most favorable to the opposing party. Dreier v. United States, 106 F.3d 844, 847 (9th Cir.
12 1996). The disputed facts related to subject-matter jurisdiction should be treated in the same way as
13 one would adjudicate a motion for summary judgment. Id.

## IV. DISCUSSION

15 Defendant contends that this action should be dismissed for lack of subject matter
16 jurisdiction, on the ground that no actual controversy over the patents-in-suit existed at the time
17 Plaintiff filed its Complaint. (Motion at 14.) Defendant also contends that this matter should be
18 transferred to the Eastern District of Texas, which Defendant asserts is the "first-filed forum." (Id.
19 at 22.) The Court considers each issue in turn.

20 **A.** **Subject Matter Jurisdiction**

21 Defendant moves to dismiss for lack of subject matter jurisdiction, asserting that it never
22 contacted Plaintiff about sixteen of the eighteen patents-in-suit prior to the filing of this action.
23 (Motion at 18.) With respect to the other two patents, the '068 and '759 patents, Defendant contends
24 that there was no actual controversy when this action was filed on September 30, 2008. (Id. at 19.)
25 Plaintiff responds with evidence that Defendant had specifically asserted a majority of the patents-
26 in-suit during the two years prior to the commencement of this action, which Plaintiff contends is

4

sufficient to permit the Court to assume subject matter jurisdiction. (Amended Opposition to Defendant's Motion to Dismiss and Motion to Transfer to First Filed Forum at 13-18, hereafter, "Opposition," filed under seal.)

The Declaratory Judgment Act provides that, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). A court may not adjudicate the rights and obligations of the parties pursuant to the Declaratory Judgment Act unless there is a "substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Maryland Cas. Co. v. Pac. Coal & Oil Co., 312 U.S. 270, 273 (1941). A claim is not ripe when it requests "an opinion advising what the law would be upon a hypothetical state of facts." MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127 (2007).

In patent cases, the "purpose of the Declaratory Judgment Act . . . is to provide the allegedly infringing party relief from uncertainty and delay regarding its legal rights." Micron Tech., Inc. v. MOSAID Techs., Inc., 518 F.3d 897, 902 (Fed. Cir. 2008). For example, in Micron, the Federal Circuit found the existence of subject matter jurisdiction under the Declaratory Judgment Act. In that case, Micron filed a declaratory judgment action in the Northern District of California, after MOSAID sent several warning letters "strongly suggesting" that Micron license MOSAID's technology and after MOSAID sued several of Micron's competitors for patent infringement. 518 F.3d at 899. MOSAID also made public statements about its "aggressive" licensing and litigation strategy. Id. at 899-900. Micron then sought a declaration of non-infringement of fourteen MOSAID patents. Id. at 900. The Federal Circuit found jurisdiction, even though several years had elapsed between the letters and the suit, and even though only seven of the fourteen patents had been specifically identified by MOSAID to Micron. Id.; Micron Tech. v. MOSAID Techs, Inc., Appellate Brief, 2007 WL 1766492, at *5 (filed May 25, 2007). In so deciding, the Federal Circuit noted that

5

1 the "lenient legal standard [established by the Supreme Court in MedImmune] . . . enhances the
2 availability of declaratory judgment jurisdiction in patent cases." Id. at 902.

### 1. Existence of a Controversy

In this case, Defendant contends that there were only contacts about the '759 and '068 patents prior to Plaintiff's filing of this action. (Motion at 19.) Plaintiff, however, responds with evidence that Defendant did, in fact, assert a majority of the patents-in-suit prior to the September 30, 2008 filing of this action. First, beginning in April 2006, Defendant contacted Plaintiff with respect to "discuss[ing Defendant's] entire portfolio in . . . WiMAX."[2] The email thread was entitled "Patent discussions with Intel." (Id.) According to Defendant, it "owns critical patents in . . . WiMAX" and "believes its WiMAX MAC patents are relevant for the 802.16 standards." (Id.) Defendant went on to state that it "believes that Intel has many products that are built to the specifications of some or all of the . . . standards [including WiMAX]," but that it had "been told by senior employees in Intel that [it has] to sue Intel to get [Intel's] attention." (Id.) Defendant concluded by attaching a list of fourteen of the patents-in-suit. (Id.)

Defendant followed up on these initial email communications by writing to Plaintiff and asserting that it "is the owner of fundamental wireless patents . . . in WiMAX, and the standards associated [with WiMAX]." (Smith Decl., Ex. 2.) Defendant accused Plaintiff of infringing four U.S. Patents, including the '068 patent at issue in this action. (Id.) Defendant stated its hope that Plaintiff "will . . . take[] a license to Wi-LAN's patent portfolio." (Id.)

Second, on September 21, 2006, Defendant's representatives attended a meeting at Plaintiff's headquarters. At the meeting, Defendant represented that it had a portfolio of fifteen WiMAX patents that applied to the WiMAX 802.16d and 802.16e standards and that "all companies complying with . . . the [WiMAX 802.16d and e standards] require a license to the Wi-LAN patent portfolio." (Smith Decl., Ex. 4.) Defendant accused Plaintiff of infringing two of those patents, the

---

[2] (Declaration of P. McCoy Smith in Support of Intel's Opposition to Defendant's Motion to Dismiss and Motion to Transfer Venue, Ex. 1, hereafter, "Smith Decl.," Docket Item No. 101.)

6

1 '068 and '759 patents. Although Defendant's slide presentation specifically named only these two
2 patents, Plaintiff has provided declaration testimony that Defendant was "clear that Intel required a
3 license to . . . the rest of Wi-LAN's entire alleged patent portfolio" based on Defendant's
4 representations at the meeting. (Smith Decl. ¶ 7; Ex. 4.)

Third, Defendant has made numerous public statements in 2007 and 2008 in which Defendant has asserted the strength of its WiMAX patent portfolio. (See Opposition at 11-12 and evidence cited therein.) For example, on June 4, 2008, Defendant stated that "the incorporation of WiMAX into a high-volume Intel platform will have a positive impact on the adoption of WiMAX technology."[3] According to Defendant, this was "significant" because Defendant "continue[d] to identify more and more patents in [its] WiMAX portfolio . . . that cover part of the WiMAX standard." (Id.)

Accordingly, the Court finds that an actual controversy existed at the time this action was filed, centered on the respective rights of the parties in the intellectual property underlying the emerging WiMAX technology.

**2.      Immediacy of the Controversy**

For purposes of declaratory judgment subject matter jurisdiction, "the issue of whether there has been meaningful preparation to conduct potentially infringing activity [is] an important element in the totality of circumstances which must be considered in determining whether a declaratory judgment is appropriate." CAT Tech LLC v. TubeMaster, Inc., 528 F.3d 871, 880 (Fed. Cir. 2008).

In this case, Plaintiff has provided evidence that it began commercially shipping WiMAX products in April 2005.[4] In 2007, Plaintiff began to ship WiMAX products that conformed to the 802.16e standard. Development of such products has continued to the present, and Plaintiff has

---

[3] (Declaration of Jared Edgar in Support of Plaintiff's Opposition, Ex. 6, hereafter, "Edgar Decl.," Docket Item No. 100.)

[4] (Declaration of Greg Welch in Support of Intel's Opposition to Defendant's Motion to Dismiss and Motion to Transfer Venue ¶ 12, hereafter, "Welch Decl.," Docket Item No. 92.)

7

invested approximately $2.5 billion in WiMAX product and infrastructure development. (Id. ¶¶ 16-17.) Plaintiff began selling WiMAX products directly to the public in 2008. (Id. ¶ 22.)

In light of this evidence, the Court finds that, at the time this action was filed, there was a "substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Maryland Cas. Co., 312 U.S. at 273. Not only had Plaintiff expended considerable resources developing WiMAX technology, Plaintiff's WiMAX technology had been commercialized before this suit commenced. Furthermore, beginning in 2006, Defendant began waving the spectre of its WiMAX patent portfolio, just as Plaintiff's commercialization efforts got underway. As such, resolution of the parties' respective rights in WiMAX technology is a sufficiently cognizable and immediate controversy to warrant exercise of the Court's subject matter jurisdiction.

Accordingly, the Court DENIES Defendant's Motion to Dismiss on the ground that it lacks subject matter jurisdiction.

**B.     Transfer of Venue**

Defendant contends that this action should be transferred to the Eastern District of Texas, which it asserts is the "first filed forum" for litigation between the parties over WiMAX intellectual property. (Motion at 22.)

The "first-to-file" rule is a well-established doctrine which allows a district court to give preference to the first-filed plaintiff's choice of forum when a complaint involving similar parties and issues has been filed in another district. Alltrade, Inc. v. Uniweld Prod., Inc., 946 F.2d 622, 625 (9th Cir. 1991); Guthy-Renker Fitness, L.L.C. v. Icon Health & Fitness, Inc., 179 F.R.D. 264, 269 (C.D. Cal 1998). Three threshold issues should be considered when deciding whether to apply the first-to-file rule: (1) the chronology of the two actions; (2) the similarity of the parties; and (3) the similarity of the issues. Guthy-Renker, 179 F.R.D. at 270 (citing Alltrade, Inc., 946 F.2d at 625). Although the rule should not be disregarded lightly, it is left to the discretion of the court whether to dispense of the rule on equitable grounds or convenience. Alltrade, Inc., 946 F.2d at 628. If the rule

1  "does apply to a suit, the court in which the second suit was filed may transfer stay or dismiss the
2  proceeding in order to allow the court in which the first suit was filed to decide whether to try the
3  case." Stemcells, Inc. v. Neuralstem, Inc., No. C 08-2364 CW, 2008 WL 2622861, at *2 (N.D. Cal.
4  July 1, 2008).

5  Exceptions to the first-to-file rule typically include bad faith, anticipatory suit, and forum
6  shopping. Alltrade, Inc., 946 F.2d at 628. Another exception to the rule exists where "the balance
7  of conveniences weighs in favor of the later-filed action." Ward v. Follett Corp., 158 F.R.D. 645,
8  648 (N.D. Cal. 1994). The analysis for this exception is similar to that for transfer of venue under
9  28 U.S.C. § 1404(a), and should normally be conducted by the court with the first-filed action.
10  Stemcells, 2008 WL 2622861, at *2.

11  In this case, Judge Ward in the Eastern District of Texas has already found that the Texas
12  Action is "first filed" with respect to the '759 patent. Judge Ward recognized the pendency of this
13  action in permitting Defendant to add the '759 patent to its complaint in the Texas Action. Judge
14  Ward reasoned that "the technologies [at issue], while different, are related in such a way that
15  compels trying the patents together. Indeed, the accused products include both the Wi-Fi and Wi-
16  MAX technologies. The parties are the same, and discovery will substantially overlap." (McManus
17  Decl, Ex. F at 2.) Judge Ward went on to note that Defendant had previously amended its Texas
18  complaint to add Wi-MAX technology, and that Plaintiff Intel did not object to that amendment. He
19  concluded his analysis by stating that "[t]he fact that Wi-LAN did not include the '759 patent in its
20  supplemental complaint is not dispositive on the issue of whether that technology should be included
21  as part of the case or controversy giving rise to this action for purposes of applying the first to file
22  rule." (Id. at 2-3.)

23  Accordingly, the Court finds that, with respect to the '759 patent, the Texas Action was first-
24  filed. Although Plaintiff contends that convenience factors weigh in favor of retaining jurisdiction
25  over this dispute in California, it is the prerogative of the first-filed court to conduct the convenience
26  analysis. See Stemcells, 2008 WL 2622831, at *2. Although Judge Ward's order contained no such

9

analysis, the Court declines to entertain such an inquiry now, in light of Judge Ward's ultimate ruling on the permissibility of litigating the '759 patent as part of the Texas Action.

With respect to the remainder of the patents-in-suit, however, the Court finds that this action is first filed. Indeed, given that Defendant contends that there is no controversy over the bulk of these patents, there is no dispute that they are not part of the parallel action now being litigated in Texas. Since the Court has already found that there is declaratory judgment jurisdiction over the remaining patents-in-suit, and since this action is first-filed with respect to those patents, the Court will permit this declaratory judgment action to proceed as to those patents.

Accordingly, the Court bifurcates this case, separating all claims with respect to the '759 patent from all other claims. The Court GRANTS Defendant's Motion to Transfer all claims as to the '759 patent to the Eastern District of Texas. The Court DENIES Defendant's Motion to Transfer the remaining patents-in-suit.

## V. CONCLUSION

The Court DENIES Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction and GRANTS in part and DENIES in part Defendant's Motion to Transfer Venue. The Clerk shall immediately transfer the case with respect to the '759 patent to the Eastern District of Texas.

The parties shall appear for a Case Management Conference on **June 22, 2009 at 10 a.m.** On or before **June 12, 2009**, the parties shall file a Joint Case Management Statement. The Statement shall include, among other things, a good faith discovery plan pursuant to the Patent Local Rules.

Dated: June 4, 2009

JAMES WARE
United States District Judge

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

Adam R. Alper aalper@kirkland.com
Christian Chadd Taylor ctaylor@kirkland.com
Gayle Rosenstein Klein gklein@mckoolsmith.com
George C. Best gbest@foley.com
Gregory S. Arovas garovas@kirkland.com
John M. Desmarais jdesmarais@kirkland.com
Michael C. Spillner mspillner@orrick.com
Michael Woodrow De Vries mike.devries@lw.com
Robert A. Cote rcote@mckoolsmith.com

Dated:  June 4, 2009               **Richard W. Wieking, Clerk**

**By:   /s/ JW Chambers
         Elizabeth Garcia
         Courtroom Deputy**